IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

GLENN TURNER,

       Plaintiff,

 v.

GARY BOUGHTON, T. HERMANS, TIM HAINES,
MR. KARTMAN, CAPT. GARDNER, L. BROWN,
J. SWEENEY, LT. SHANNON-SHARPE, LT. TOM,
B. KOOL, SGT. KUSHMAHL, OFC. MCDANIEL,    OPINION and ORDER
OFC. TAYLOR, CAPT. PRIMMER, CAPT. HANFELD,
ELLEN RAY, WILLIAM BROWN, DR. JOHNSON,     17-cv-203-jdp
MS. LEMIEUX, DR. SCOTT RUBIN-ASCH,
DR. HOEM, MS. MINK, CATHY BROADBENT,
MR. EWING, MR. EVERS, CATHY JESS,
DAN WESTFIELD, EDWARD WALL,
MR. WIESGERBER, DAN WINKLESKI,
and MS. SEBRANEK,

       Defendants.

---

  Plaintiff Glenn Turner alleges that prison officials have violated his rights by housing him in solitary confinement at the Wisconsin Secure Program Facility (WSPF) for the last several years. I allowed to him to proceed on constitutional claims about the process he received in reviewing his custody, his conditions of confinement, his medical care, and alleged retaliation against him. Dkt. 31. This order addresses several filings by the parties.

**A. Turner's severed claims**

  The claims listed above about Turner's continued segregation at WSPF were only part of Turner's 82-page complaint. He also brought claims related to his previous solitary confinement at Green Bay Correctional Institution (GBCI) as well as claims about his treatment at WSPF unrelated to his segregation, such as claims about interception of his mail and denial of religious services. I severed those claims from this lawsuit and gave Turner a

chance to explain whether he would like to bring those claims in two additional lawsuits: one about his claims concerning GBCI, and one about the WSPF claims unrelated to his solitary-confinement claims. Dkt. 31, at 3–5.

Turner has responded, stating that he would like to pursue both separate lawsuits. Dkt. 32. So I will have the clerk of court place his complaint in two new lawsuits.

**B. In forma pauperis status**

Turner is proceeding in forma pauperis with this case. Ordinarily, I would screen Turner's two new cases after receiving an initial partial payment of the filing fee for each of the new cases. But the group of defendants represented by the attorney general's office, who I'll refer to as the "state defendants," have filed a motion to dismiss much of this case, contending that Turner has three "strikes" under 28 U.S.C. § 1915(g) so he should have his in forma pauperis status revoked concerning all the non-imminent-danger claims in this case.[1] If Turner is a three-striker, that also means that he could not apply for in forma pauperis status in his two new cases because those cases do not involve imminent-danger claims.

Under the Prison Litigation Reform Act, a prisoner receives a strike when one of his federal cases is "dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted." Section 1915(g). The state defendants say that Turner has accrued strikes in the following cases: *Turner v. Murphy*, 93-C-781-S (W.D. Wis. Nov. 16, 1993); *Turner v. Endicott*, 96-C-881-S (W.D. Wis. Oct. 28, 1996); and *Hashim v. Berge*,

---

[1] The only defendant not represented by the attorney general's office, Edward Wall, states that he joins in the motion to dismiss. Dkt. 85.

01-C-314-C (Sept. 24, 2001).[2] I agree with the state defendants that each of these dismissals warrants a strike.

Turner does not challenge the strike in the *Hashim* case. Both Turner's 1993 and 1996 cases were dismissed at screening, with Judge Shabaz saying that "the Court states with certainty that petitioner is unable to make any rational argument in law or fact to support his claim for relief." *See* Dkt. 72-1 and Dkt. 72-2. Judge Shabaz didn't explicitly say that Turner's allegations were frivolous or failed to state claims, but that's the only reasonable interpretation of those dismissals. Turner argues that those dismissals are for failure to exhaust administrative remedies, but that is clearly incorrect.

Turner argues that the 1993 and 1996 dismissals should not count as strikes because they were dismissed without prejudice. But whether a case is dismissed with or without prejudice does not matter; what matters is the *ground* for dismissal. *See Paul v. Marberry*, 658 F.3d 702, 704 (7th Cir. 2011).

Turner also argues that I've already decided the issue in his favor because I granted him leave to proceed in forma pauperis despite him submitting a state of Wisconsin certification that he had three strikes. *See* Dkt. 1-1. But that form concerns Wisconsin's three-strikes law, and two of the three strikes mentioned on that form are state-court cases that do not count as strikes for purposes of the federal PLRA. Turner says that defendants may challenge the in forma pauperis decision only by appeal, but that is incorrect. I can reconsider any non-final ruling during the course of the lawsuit. The state defendants have now unearthed three federal

---

[2] Turner was one of many co-plaintiffs in the *Hashim* case.

3

strikes, so it is appropriate for me to reconsider Turner's in forma pauperis status. I conclude that he has three strikes under § 1915(g).

The state defendants say that this means that I should dismiss Turner's non-imminent-danger claims until he pays the full $400 filing fee for the case. Ordinarily, I would give a plaintiff a short time to pay the reminder of the $400 fee before dismissing the claims. But this has all been mooted—at least in this lawsuit—by the fact that Turner has now paid more than $400 toward this lawsuit. The clerk's office informs me that it received a check for almost $75 more than was necessary to pay off what at that point was a $350 filing fee,[3] and that the extra funds were routed to another of Turner's outstanding filing-fee debts in this court, Case No. 17-cv-764-jdp. Turner asks for "financial reassessment" by using this payment to pay off the remainder of his filing fee for this case. Dkt. 96. I will grant that motion. Now that Turner owes $400 for the filing fee for this case, I will direct the clerk of court to transfer $50 from the '764 case to pay the remainder of the filing fee for this case. Turner may proceed with all of the claims that passed screening in this case.

But my ruling on Turner's three-strike status does affect his two new cases. I will give Turner a short deadline to make full $400 payments of the filing fees for those cases or they will be dismissed.

**C. Reconsideration of screening**

Turner has filed two motions to reconsider aspects of my order screening his complaint. Dkt. 37 and Dkt. 64. Turner notes that in the screening order, I incorrectly summarized his

---

[3] Plaintiffs who are granted in forma pauperis status need pay only a $350 filing fee. Non-in-forma-pauperis plaintiffs must also pay a $50 "administrative fee." As shorthand, this court routinely refers to the total $400 as the filing fee for a case.

mental health diagnoses, instead listing diagnoses from a paragraph of the complaint pertaining to a different prisoner whom Turner originally intended to be a co-plaintiff. Turner's own diagnoses are listed in the paragraph below: he currently suffers from "schizotypal personality disorder with paranoid and antisocial features." *Compare* Dkt. 1, at 64, ¶ 310 (Turner's diagnoses) with ¶ 309 (the other prisoner's diagnoses). Turner asks for the screening order to be corrected to reflect this mistake. Dkt. 37. I'll deny the motion because there's no need to re-issue the screening order with the correct version of Turner's maladies: the change does not affect the scope of the case, and the parties and the court should now be clear about Turner's allegations.

Turner also contends that I should reconsider my decision denying him leave to proceed on due process claims directly about prison officials failing to follow Wisconsin Administrative Code procedures in conducting reviews of Turner's ongoing administrative confinement. *See* Dkt. 31, at 9–10. He argues that I should exercise supplemental jurisdiction over state-law claims for those violations. But he doesn't cite any authority, and I am unaware of any, suggesting that he can bring a private cause of action for the violation of these procedures; challenges to actions under these regulations may be brought only in state court by certiorari action, if at all. *E.g.*, *State ex rel. L'Minggio v. Gamble*, 2003 WI 82, ¶ 23, 263 Wis. 2d 55, 667 N.W.2d 1; *see also Outagamie County v. Smith*, 38 Wis. 2d 24, 34, 155 N.W.2d 639, 645 (1968) (with respect to laws that are not made enforceable by statute expressly, action is reviewable only by certiorari).

Turner also argues that violations of the regulations are enough to state federal due process claims because those regulations contain "mandatory language" creating a liberty interest. But the "mandatory language" test no longer applies to deprivations of prisoner's

5

liberty; instead, under *Sandin v. Conner*, 515 U.S. 472, 483 (1995), the question is whether a restriction imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." I've already concluded that Turner has a liberty interest in avoiding indefinite placement in administrative confinement. But the process he is entitled to receive in reviewing that confinement is "informal, nonadversarial" process. *See* Dkt. 31, at 9 (citing *Wilkinson v. Austin*, 545 U.S. 209, 226 (2005); *Westefer v. Neal*, 682 F.3d 679, 684 (7th Cir. 2012). He does not have a liberty interest specifically in DOC officials complying with their own procedures. So I will deny Turner's motion for reconsideration.

**D. Motion to strike letters**

The state defendants have filed a motion to strike one of Turner's filings. Dkt. 53. The filing consists of a document he calls an affidavit (although it's really a declaration) with two attachments: copies of letters addressed to "Diamond" from someone calling himself "N.E.L. Your Brother 'G.F.'" Dkt. 20; Dkt. 20-1; Dkt. 20-2. The state defendants submit a declaration from Lebbeus Brown, former WSPF security threat groups coordinator, stating that the letters are communications between gang leadership that would have been confiscated had they been sent directly out of the prison, because they constitute attempts to discuss the gang's organizational structure. *See* Dkt. 54. Brown says that the letters were written to Turner, who is known as "Diamond," by Brian Crenshaw, who they say is known as "GF" or "the Godfather," and who is a board member of the Gangster Disciples. The state defendants also note that Turner submitted a money order to pay for the clerk's office to send a copy of those letters to an outside party, Josh Belton, whom Brown says is another high-ranking member of the Gangster Disciples. *See* Dkt. 48. The clerk's office sent those copies to Crenshaw.

6

After the state defendants filed their motion to strike, an outside party named Santia Ninham submitted a money order asking for copies of those letters. The state defendants filed a motion asking the court not to follow through on fulfilling the request pending a ruling on the motion to strike. Dkt. 68. The clerk's office has already returned Ninham's payment, stating that it would not fulfill the request while the motion to strike was pending. Dkt. 73. So I'll deny the state defendants' motion regarding Ninham's request as moot.

Turner has filed his own motion: one for sanctions against the state defendants for attempting to squelch his right of access to the courts by submitting documents in support of his claims. Dkt. 80. He says that the state defendants falsely accuse him of discussing gang organizational matters. He says that he is not a member of the Gangster Disciples and that his letters are a legitimate attempt at forming an organization to address issues facing prisoners, such as long-term solitary confinement and prisoner legal aid. He says that he submitted the letters to address some of his claims in his case, which I take to be his claims that prison staff keeps him in administrative confinement with scant evidence that he is involved in a gang.

I would need to hold a hearing to make definitive factual findings about the actual purpose of the letter, although I note that Turner does not plausibly explain why he and others are attempting to use the court docket to disseminate the letters. But it's not necessary to hold a collateral proceeding on the matter because even if the letters are not gang communications, they have no place on the record at the current stage of the lawsuit. Turner did not submit these letters in support of or in opposition to any motion filed by a party. As Turner should well be aware from his history of litigation in this court, parties are not allowed to place whatever they wish on the court's docket at any time. Exhibits like the ones at issue here need to be offered in conjunction with a specific motion or in response to a briefing schedule set by

the court. There isn't a live motion to dismiss, motion for summary judgment, or any other motion to which these letters could be plausibly related. So I will grant the state defendants' motion to strike the filing, and I'll deny Turner's motion for sanctions.

This is not the first problem that I've had with irrelevant submissions from Turner in this case. Turner earlier asked the clerk of court to send him copies of pornographic materials that were had placed on the docket after he was denied them at the prison. I struck those documents from the record as irrelevant to the case at hand. *See* Dkt. 55. The public docket of the court's proceedings is not meant to be an engine for Turner's efforts in circumventing restrictions on his communications in prison. I'll direct the clerk of court to get my permission before fulfilling any docket-copying requests of the sort at issue here, and defendants may file a motion to seal or strike any materials Turner places on the docket that they believe has been filed for an inappropriate reason. Should Turner file any more documents that appear to be for purposes other than litigating this lawsuit, I will consider sanctions against Turner, including severe penalties such as dismissing this case and his other lawsuits, or barring him from filing future lawsuits in this court.

E. **Motion to stay schedule**

The state defendants filed a motion to stay the schedule pending a ruling on their motion to dismiss. I'll grant that motion and push back the expert-disclosure and dispositive-motions deadline. Turner may have until April 8, 2020 to disclose his experts; defendants may have until May 8, 2020 to disclose theirs. The new dispositive motions deadline is also May 8, 2020.

8

ORDER

IT IS ORDERED that:

1. The clerk of court is directed to open plaintiff Glenn Turner's complaint in two new lawsuits.

2. The clerk of court is directed to note plaintiff's three-strike status.

3. Plaintiff's motion for financial reassessment, Dkt. 96, is GRANTED. The clerk of court is directed to withdraw $50 from plaintiff's payments made to Case No. 17-cv-764-jdp and deposit that amount in this case.

4. Defendants' motion to dismiss the non-imminent-danger portions of plaintiff's complaint, Dkt. 70, is DENIED.

5. Plaintiff may have until March 30, 2020, to submit the full $400 filing fee for each of his newly severed cases or those cases will be dismissed.

6. Plaintiff's motions for reconsideration of the court's order screening his complaint, Dkt. 37 and Dkt. 64, are DENIED.

7. The state defendants' motion to withhold mailing of plaintiff's submissions that are the subject of their motion to strike, Dkt. 68, is DENIED as moot.

8. The state defendants' motion to strike Dkt. 20 and its attachments, Dkt. 53, is GRANTED. Those materials are STRUCK from the record.

9. The clerk of court is directed to route to chambers any requests for copies of documents submitted by plaintiff or outside parties.

10. Plaintiff's motion for sanctions, Dkt. 80, is DENIED.

11. The state defendants' motion to stay the schedule, Dkt. 97, is GRANTED. The schedule is amended as set forth above.

Entered March 9, 2020.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge