IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

GLENN TURNER,

                Plaintiff,

  v.

GARY BOUGHTON, T. HERMANS, TIM HAINES,
MR. KARTMAN, CAPT. GARDNER, L. BROWN,
J. SWEENEY, LT. SHANNON-SHARPE, LT. TOM,
B. KOOL, SGT. KUSSMAUL, OFC. MCDANIEL,        OPINION and ORDER
OFC. TAYLOR, CAPT. PRIMMER, CAPT. HANFELD,
ELLEN RAY, WILLIAM BROWN, DR. JOHNSON,         17-cv-203-jdp
MS. LEMIEUX, DR. SCOTT RUBIN-ASCH,
DR. HOEM, MS. MINK, CATHY BROADBENT,
MR. EWING, MR. EVERS, CATHY JESS,
DAN WESTFIELD, EDWARD WALL,
MR. WIESGERBER, DAN WINKLESKI,
and MS. SEBRANEK,

                Defendants.

---

Plaintiff Glenn Turner, appearing pro se, is a prisoner at Wisconsin Secure Program Facility (WSPF). Turner alleged that prison officials violated his rights in several ways related to his long-term placement in solitary confinement. There are two sets of defendants in this case: there is a group of defendants represented by the attorney general's office who I have referred to as the "state defendants," and defendant Ed Wall is proceeding separately from this group. I granted both sets of defendants' motions for summary judgment in all respects but one: I denied the state defendants' motion for summary judgment on an Eighth Amendment claim about denial of mental health treatment, severed that claim from this lawsuit, and consolidated it with Turner's mental health claims in another pending lawsuit, No. 19-cv-1001-jdp. Dkt. 184. Because there were no active claims remaining under this case number, I dismissed the case. *Id.*

Turner has responded by filing a motion he calls one "for reconsideration and to reverse, amend decision and order" under both Federal Rules of Civil Procedure 59 and 60. Dkt. 187. Because Turner filed his motion within 28 days of the judgment, I will consider his motion as one to alter or amend the judgment under Rule 59(e). For the reasons stated below, I will deny Turner's motion.

I begin with a word about the state defendants' response to Turner's Rule 59 motion. Rather than file a substantive response to Turner's arguments, the state defendants briefly state that the motion should be denied because Turner merely reargues the claims he lost, and they then ask the court to strike Turner's exceedingly lengthy motion (it is 61 pages) because "[i]t is unreasonable to require Defendants to respond point-by-point to a motion to reconsider that is over twice the limit for summary judgment briefs" and to order Turner to resubmit a motion of no more than ten pages. Dkt. 188. I agree that Turner's motion is quite lengthy. But this court doesn't have a page-limit rule for filings, defendants do not cite any authority for the proposition that a party should be limited to ten pages for a Rule 59 motion, nor would I order a party to follow such a stringent page limit in seeking relief in a case with as many claims as Turner brought here. I will deny the state defendants' motion to strike Turner's Rule 59 motion and I caution counsel about making poorly founded motions to strike filings instead of substantively responding. I'll consider Turner's Rule 59 motion without further input from the state defendants.

Relief under Rule 59(e) is an "extraordinary remed[y] reserved for the exceptional case." *Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008). A Rule 59(e) motion is successful only where the movant clearly establishes: (1) that the court committed a manifest error of law or

fact; or (2) that newly discovered evidence precludes entry of judgment. *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 954 (7th Cir. 2013). None of Turner's arguments meet these standards.

## A. Scope of the case

Much of Turner's motion is focused on claims that he says I did not consider, such as a due process claim that the gang-communication disciplinary regulation he was repeatedly punished under was unconstitutionally vague, and First Amendment and due process claims about his correspondence with other inmates and possession of legal materials. Turner also argues that I erred in severing some of his claims at the outset of his case. Dkt. 187, at 2.[1] In his 80-page complaint naming 50 defendants, Turner brought a variety of claims about his time at two prisons: WSPF, and before that, Green Bay Correctional Institution (GBCI). In screening the complaint, I limited Turner's claims to those directly about his long-term solitary confinement at WSPF, noting that "Turner's claims about his treatment at GBCI concern an entirely different set of defendants that would make a combined case too unwieldly to effectively litigate." Dkt. 31, at 4. I also severed claims about events at WSPF unrelated to Turner's long-term solitary confinement.

None of Turner's arguments on the scope of the case relate to rulings I made in the summary judgment opinion. Rather, they relate to my original screening order in the case. It is far too late for Turner to attempt to undo the judgment to reconsider decisions made at screening. *See Cincinnati Life Ins. Co.*, 722 F.3d at 954 (Rule 59(e) "does not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to

---

[1] In his Rule 59 motion, Turner's internal page numbering is slightly different than the court CM/ECF system's numbering. I will refer to the court's numbering rather than Turner's.

the district court prior to the judgment." (internal quotation omitted)). I note that Turner did file two motions for reconsideration of my screening order, Dkt. 37 and Dkt. 64, but he did not raise the issues he now belatedly brings in his Rule 59 motion.

Turner alternatively argues that under Federal Rule of Civil Procedure 21, I should have opened a second case number for his GBCI claims. But the court already did so. I gave Turner an opportunity to explain whether he wished to open new case numbers concerning his claims about (1) events at GBCI; and (2) events at WSPF that I severed from this case. *See* Dkt. 31, at 5, 26. Turner responded that he wished to open two new case numbers with those claims. Dkt. 32. But Turner voluntarily dismissed both of those cases (Nos. 20-cv-209-jdp and 20-cv-210-jdp), concluding that he did not want to pay the $400 filing fee for each case that he was required to pay up front given his three-strike status under the Prison Litigation Reform Act. *See* Dkt. 106.

## B. Due process and retaliation claims about solitary confinement

### 1. Due process standard

Turner raises a series of arguments regarding the process he received in his periodic administrative-confinement hearings and in his disciplinary proceedings.

Turner contends that I "chose not to apply the due process legal standard" to his due process claims about these proceedings by stating that he was entitled to only "'informal, nonadversarial due process'" in those proceedings. Dkt. 184, at 17 (quoting *Westefer v. Neal*, 682 F.3d 679 (7th Cir. 2012)). But that was the correct standard to apply when considering the liberty interest at stake, Turner's placement in solitary confinement. Turner adds that the gang-communication regulation he was disciplined under didn't give him proper notice of the conduct that was prohibited. That restates another separate ground that Turner adds in his

Rule 59 motion: that the gang-communication regulation is unconstitutionally vague. Dkt. 187, at 22; *see also Toston v. Thurmer*, 689 F.3d 828, 832 (7th Cir. 2012) ("A deprivation of liberty without fair notice of the acts that would give rise to such a deprivation violates the due process clause[.]").

But as I stated above, I did not grant Turner leave to proceed on this type of due process claim, and despite filing two motions for reconsideration of my screening order, Turner did not argue that I incorrectly left out a claim about the unconstitutional vagueness of the gang-communication regulation. Even if he hadn't belatedly raised this argument, I would reject it. Turner was repeatedly convicted for using language that prison officials believed to be code for Gangster Disciple-related communications. Given his long history of discipline for engaging in gang activity, Turner should have been well aware that he could be punished for using coded language to conceal communications related to the Gangster Disciples. What Turner really means is that the evidence wasn't sufficient to convict him: he says he isn't in the Gangster Disciples anymore and his communications had nothing to do with a gang. But as I stated in the summary judgment opinion, the court generally defers to prison officials on matters of prison security. His arguments about the correctness of disciplinary decisions are better addressed on appeal and then in certiorari proceedings in state court; this court is not the proper place to challenge whether state officials properly interpreted their regulations.

### 2. Procedure in administrative-confinement hearings

Turner contends that I erred in rejecting arguments he made in support of claims about being deprived of due process in his periodic administrative-confinement reviews. Dkt. 187, at 4. Turner reiterates that some of these proceedings did not comply with Wisconsin administrative regulations concerning notice and timing: he says that some of his hearings were

5

heard days after the six-month window for doing so and that he didn't receive notices provided for under the previous versions of the administrative code. But as I previously ruled, Turner was entitled to only informal process in those proceedings. Dkt. 184, at 17. Turner is attempting to relitigate arguments that I already concluded were foreclosed under the relevant precedent. This court cannot use the Due Process Clause to hold the state to the precise contours of its administrative hearing procedures. *See Shango v. Jurich*, 681 F.2d 1091, 1101 (7th Cir. 1982). And in any event, the proceedings at which he stated he didn't get proper notice were decades ago and not directly the subject of his claims. Even if Turner didn't get proper notice under *Westefer* at those long-ago hearings, that doesn't invalidate every later administrative decision relying in part of the findings at those hearings.

### 3. Disciplinary proceedings

Turner incorrectly contends that I acted in place of the jury by choosing defendants' version of events over his and by making credibility determinations. In particular, he contends that I incorrectly analyzed the parties' proposed findings of fact concerning his retaliation and due process claims against defendant Lebbeus Brown and David Gardner for falsifying a conduct report against him in 2011. Turner believes that they issued the conduct report in retaliation for him choosing not to cooperate in an investigation into other inmates' letters discussing a proposed class action lawsuit. The basis for the conduct report was a series of letters that Turner wrote to other inmates about a joint lawsuit that Brown and Gardner believed used coded language to conceal gang communications regarding the Gangster Disciples. At summary judgment, the state defendants provided the conduct report and Brown's contemporaneous interpretation of the letters (Brown was the prison's "security threat

group coordinator"), but defendants did not produce the underlying letters because they had not been preserved.

In his Rule 59 motion, Turner contends that I erroneously made a credibility determination or factual finding by assuming that the letters in fact existed. But at summary judgment the parties didn't dispute that Turner authored the letters in question, and a Rule 59 motion is not the proper place to raise for the first time an argument that the underlying letters were fabricated by Brown or Gardner. Turner now states that he "NEVER wrote any gang related letters," Dkt. 187, at 13, but the proposed findings of fact he cites to support that statement admit that he corresponded with other inmates, while noting that defendants did not produce admissible evidence supporting their assertion that he wrote the letters. Dkt. 145, ¶¶ 95–96; Dkt. 147, ¶¶ 176–77.

It's true that defendants didn't produce the actual letters, but that's not the same as saying that they never existed or that Turner wasn't the author of them. At summary judgment and even in his underlying 2011 disciplinary proceedings, Turner didn't argue that the letters were flat-out fakes; rather, he argued that the allegations of gang activity against him were "fabricated" because his letters were legitimate correspondence among prisoners about a potential joint lawsuit instead of coded gang communications.

At summary judgment Turner didn't present any evidence to show that defendants Brown and Gardner actually held animus toward Turner's participation in a legitimate lawsuit, as opposed to them punishing him for their honest—even if mistaken—belief that he was engaged in coded gang communications. That is, even if defendants mischaracterized the letters as coded gang communications, that wasn't enough to prove that they meant to retaliate against Turner.

Given the lack of evidence in the summary judgment record suggesting that the letters were fake or that defendants meant to retaliate against Turner, it was appropriate for me to grant summary judgment to defendants on those claims. I did not make credibility determinations or resolve genuine disputes of material fact against Turner to do so.

Turner also contends that I erred in allowing defendants to submit "summaries" of the letters rather than the underlying letters themselves. But the summaries that defendants submitted were the conduct report and defendant Brown's contemporaneous analysis of the letters, which was acceptable evidence showing what occurred in Turner's disciplinary proceedings. There was nothing improper about defendants submitting that material or the court considering it.

4. **Length of solitary confinement**

Turner contends that I did not consider the total length of the time he spent in solitary confinement in analyzing the scope of his liberty interests for his due process claims and that prison staff failed to use the "least restrictive means" of disciplining him. Dkt. 187, at 57–58. Besides mixing the elements of different types of claims, Turner misapprehends how those standards applied to his claims. Counter to his assertions, I explicitly assumed that the length of time he spent in solitary confinement was enough to establish a liberty interest for his due process claims. Dkt. 184, at 17. The problem for Turner was that he failed to show that he was deprived of process that he was due.

Turner's contention that staff failed to use the "least restrictive means" of disciplining him invokes a concept more commonly applied in prisoner cases involving the First Amendment or Religious Land Use and Institutionalized Persons Act, not to his due process claims at issue here. He suggests that defendants could have continued to monitor his

8

communications while leaving him in general population, as he says they started doing after his filed this lawsuit. Or that they could have simply confiscated materials that they thought were improperly gang related instead of issuing him conduct reports. I agree that defendants could have punished Turner less harshly: in considering his due process claims I stated that "I am not persuaded that keeping Turner in solitary confinement forever because of oblique references to the Gangster Disciples is necessary, humane, or wise." *Id.*, at 2 But the record showed that Turner had received the limited process he was due for the discrete administrative decisions at issue in this case. If Turner means to say that I should have considered a different type of claim concerning the sheer length of his long-term solitary confinement or whether he received discipline disproportionate to his offenses, I did not grant him leave to proceed on any such claim and he did not seek reconsideration of my screening order on those grounds.

## C. Handcuffing

Turner contends that I erred in granting summary judgment to defendants on his Eighth Amendment claims that he was subject to a High Risk Offender Program handcuffing policy that caused him severe pain, damaged his skin, and eventually caused numbness in his hands. I concluded that Turner failed to present evidence showing that most of the defendants he named for those claims—supervisory officials who created or enforced the handcuffing policy— were personally involved in consciously disregarding the harm to Turner, because there wasn't anything on the face of the policy suggesting it would be harmful to inmates, and the supervisory defendants weren't involved in Turner's day-to-day struggles with the handcuffs. In his Rule 59 motion, Turner states that he did present evidence that he warned those defendants of his problem by writing letters to them, but I addressed that evidence in the summary judgment opinion, stating that Turner did not explain when he wrote those letters or

9

how defendants responded to the problem other than to note one administrative grievance discussed below. Dkt. 184, at 51. And generally, the Eighth Amendment doesn't require high-ranking officials to respond to every letter they receive about problems more appropriately handled by their subordinates. *See Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009).

Turner's grievance about his hand injuries did show that defendants Ellen Ray and Gary Boughton were more directly involved in the problem: they dismissed that grievance, stating that he would have to contact medical staff about obtaining a handcuffing restriction. That evidence couldn't lead a reasonable jury to conclude that they consciously disregarded the problem, because they appropriately delegated the issue to medical staff. In his Rule 59 motion, Turner says that medical staff didn't provide him with adequate help afterward, but that isn't enough to show that Ray or Boughton consciously disregarded the problem. And Turner didn't bring handcuffing claims against the medical staff.

**D. Recruitment of counsel**

Turner argues that I erred in denying his motion for the court's assistance in recruiting him counsel, a ruling I included in the summary judgment opinion. *See* Dkt. 184, at 3–4. His motion for counsel was a vague one, stating generally some of the common hurdles that pro se litigants face at summary judgment. I denied the motion regarding those general concerns, but I then also addressed—and denied—his request as it pertained to the claim surviving this case, about defendant Angela Mink's failure to arrange treatment for him. *Id.* In his Rule 59 motion, Turner doesn't directly address either of those rulings, nor would it be proper to address the claim against Mink here because I severed that claim and consolidated it into another of Turner's cases, No. 19-cv-1001-jdp.

Instead, Turner argues that counsel was necessary to recruit an expert to address his arguments about staff's failure to heed his mental health diagnoses and prescriptions for anti-psychotic medications from years preceding the events of this case. But Turner didn't raise that issue as a reason to recruit him counsel in his original motion so he can't raise it now. And in any event, as I stated in the summary judgment order, Turner's mental health claims didn't boil down to whether he had a history of mental health problems in the distant past. The question was whether defendants consciously disregarded his mental health needs given the totality of the treatment record that defendants had in front of them at the time. Recruited counsel or an expert wouldn't have made a difference because nothing in Turner's full medical record suggested that any of the defendants on those claims acted with conscious disregard to his condition. *Id.* at 45.

ORDER

IT IS ORDERED that:

1. The state defendants' motion to strike plaintiff Glenn Turner's motion to alter or amend the judgment, Dkt. 188, is DENIED.

2. Plaintiff's motion to alter or amend the judgment, Dkt. 187, is DENIED.

Entered March 14, 2022.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge